UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VICTOR CLARKE FORD, JR.,

                                 **Plaintiff,**                    03-CV-0927(Sr)

v.

**JAMES CONWAY, et al.,**

                                 **Defendants.**

_____

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. #45.

Plaintiff, a former inmate at the Attica Correctional Facility, filed this *pro se* action on or about November 20, 2003 in the United States District Court for the Northern District of New York seeking relief pursuant to 42 U.S.C. §§ 1983 and 1985. Dkt. #1. Plaintiff's remaining claim against defendants James Conway, Richard A. Savage and Glenn S. Goord alleges that he was illegally detained beyond his maximum release date of May 14, 2003 in violation of his rights pursuant to the United States Constitution.[1] Currently before the Court is defendants' motion for summary judgment.

---

[1] By Decision and Order dated March 16, 2004, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, United States District Judge Michael A. Telesca ordered that unless plaintiff filed an amended complaint by April 1, 2004, plaintiff's (1) "reasonable accommodation claim (Complaint, First and Second Causes of Action, ¶¶ 5-6), which this Court construes as a claim under Title II of the Americans With

Dkt. #49. For the following reasons, defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff, a former inmate at the Attica Correctional Facility ("Attica") filed this *pro se* action on or about November 20, 2003 in the United States District Court for the Northern District of New York against defendants James Conway, T.G. Eagen, Richard A. Savage, Glenn S. Goord and K. Bellamy. Dkt. #1. Plaintiff alleges that while he was incarcerated at Attica, defendants, *inter alia*, denied him reasonable accommodation for a disability, disregarded a "proscribed [sic] order" requiring "no shower chair," violated his right to equal protection, and "detain[ed plaintiff] beyond [his] court assigned maximum release date." Dkt. #1. Thereafter, because the acts about which plaintiff complains in his complaint allegedly occurred at Attica, located within the Western District of New York, this action was transferred from the Northern District of New York to the Western District of New York. Dkt. #4.

---

Disabilities Act, 42 U.S.C. § 12132 is dismissed with prejudice against the named defendants"; (2) plaintiff's equal protection claim in relation to his delayed application for SSI benefits (Complaint, Third Cause of Action) is dismissed; (3) plaintiff's Eighth Amendment claims based on defendants' alleged failure to provide adequate medical care and failure to rectify deficiencies (Complaint, First, Second, Fourth, and Fifth Causes of Action, ¶¶ 5-8) are dismissed. Dkt. #7. District Judge Telesca did, however, order that the complaint be served on defendants James Conway, Richard Savage and Glenn Good with respect to plaintiff's claim that he was held in custody beyond his claimed maximum release date. *Id*. Thereafter, by Decision and Order dated June 8, 2004, United States District Judge William M. Skretny ordered that by reason of plaintiff's failure to file an amended complaint by April 1, 2004 and in accordance with District Judge Telesca's prior Decision and Order (Dkt. #7), plaintiff's First through Fifth causes of action be dismissed with prejudice and defendants Eagen and Bellamy be terminated as parties to this action. Dkt. #14.

Following the transfer to the Western District of New York, United States District Judge Michael A. Telesca issued an Order dismissing several of plaintiff's claims unless plaintiff filed an amended complaint by April 1, 2004. Specifically, District Judge Telesca's Order dismissed: (1) plaintiff's "reasonable accommodation claim (Complaint, First and Second Causes of Action, ¶¶ 5-6), which this Court construes as a claim under Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132;" (2) plaintiff's equal protection claim in relation to his delayed application for SSI benefits (Complaint, Third Cause of Action); and (3) plaintiff's Eighth Amendment claims based on defendants' alleged failure to provide adequate medical care and failure to rectify deficiencies (Complaint, First, Second, Fourth, and Fifth Causes of Action, ¶¶ 5-8). Dkt. #7. Notwithstanding District Judge Telesca's Order giving plaintiff the opportunity to file an amended complaint by April 1, 2004, plaintiff failed to file an amended complaint. Accordingly, consistent with District Judge Telesca's prior Order (Dkt. #7), United States District Judge William M. Skretny issued an Order dated June 8, 2004 dismissing with prejudice plaintiff's First through Fifth Causes of Action and terminating defendants T.G. Eagen and K. Bellamy as parties. Dkt. #14.

Plaintiff's only remaining cause of action states in its entirety:

[d]efendants Conway, Savage, and Goord further acted in such an [sic] deliberate and evil manner, by illegally detaining me beyond my court assigned maximum release date of May 14, 2003, and thereby not only violated plaintiff's civil rights, but the Constitution of the United States and the New York State Constitution's Article 1 Section 6.

Dkt. #1, ¶ 9. In the introductory paragraphs to the complaint, plaintiff alleges that he

was "previously incarcerated legally" at Attica from August 15, 2002 to May 14, 2003. *Id*. at ¶ 4. From May 14, 2003 until June 6, 2003, however, plaintiff alleges that his incarceration at Attica was "illegal." *Id*.

In support of their motion for summary judgment, defendants submit the affidavit of Richard de Simone, Associate Counsel in charge of New York's Department of Correctional Services ("DOCS") Office of Sentencing Review. Dkt. #57. In his affidavit, Mr. de Simone calculates the maximum expiration date of plaintiff's original sentence and thereafter, re-calculates the maximum expiration date of plaintiff's sentence following, *inter alia*, his return to DOCS as a conditional release violator. On November 7, 1985, plaintiff was sentenced by the Oneida County Court to a term of six (6) years to eighteen (18) years for Sodomy 1st and two terms of two (2) years to six (6) years for Sexual Abuse 1st (hereinafter referred to as "the 1985 sentences"). Dkt. #58, ¶ 6. The three terms were ordered to run concurrent. *Id*. The 1985 sentences commenced when plaintiff was transferred to DOCS on December 24, 1985 pursuant to N.Y. Penal Law § 70.30(1). *Id*. at ¶ 7. At that time, pursuant to N.Y. Correction Law § 600-a and N.Y. Penal Law § 70.30(3), the eighteen (18) year maximum term was credited with 218 days of jail time "certified to the 1985 sentences by the Oneida County Sheriff's Department." *Id*. The certification from the Oneida County Sheriff's Department did not, however, specify the dates included in the 218 day period. *Id*.

As explained in the de Simone affidavit, the maximum expiration date of the 1985 sentences was initially calculated as follows (years-months-days):

```
  18-00-00    controlling maximum term of concurrent 1985 sentences
-  00-07-08   credit of 218 days of jail time
  17-04-22    time to serve on maximum term
+ 1985-12-24  date 1985 sentences commenced upon transfer to DOCS
  2003-05-15  initial maximum expiration date
```

Dkt. #57, ¶ 4 and Exhibit B thereto; Dkt. #58, ¶ 8. Thereafter, on September 27, 1996, the maximum expiration date of the 1985 sentences was recalculated pursuant to an undated, amended jail time certificate issued by the Oneida County Sheriff's Department. *Id*. at ¶ 9. The certificate increased plaintiff's jail time credit from 218 days to 219 days for the period May 19, 1985 and December 23, 1985 and plaintiff's maximum expiration date was re-calculated as follows.

```
  18-00-00    controlling maximum time of concurrent 1985 sentences
-  00-07-09   credit of 219 days of jail time
  17-04-21    time to serve on maximum term
+ 1985-12-24  date 1985 sentences commenced upon transfer to DOCS
  2003-05-14  adjusted maximum expiration date
```

Dkt. #57, ¶ 5 and Exhibits C & D thereto; Dkt. #58, ¶ 9.

On May 17, 1999, plaintiff was conditionally released to supervision by the New York State Division of Parole ("Parole"). Thereafter, Parole declared plaintiff delinquent as of July 5, 2000. Dkt. #57, ¶ 6; Dkt. #58, ¶ 10. Accordingly, the 1985

sentences were interrupted during the period between the July 5, 2000 delinquency date and the September 27, 2000 date on which plaintiff was returned to DOCS as a conditional release violator. Dkt. #57, ¶ 6 and Exhibits A & E thereto; Dkt. #58, ¶ 10; *see also* N.Y. Penal Law § 70.40(3)(b). Upon plaintiff's return to DOCS as a conditional release violator on September 27, 2000, the 1985 sentences were thereafter credited with fifty-three (53) days of parole jail time for the period between August 5, 2000 (the date on which plaintiff was arrested) and September 26, 2000. Dkt. #57, ¶ 7; Dkt. #58, ¶ 11. Accordingly, on October 2, 2000, the July 5, 2000 delinquency date and the 53 days parole jail time credit resulted in the following re-calculation of the plaintiff's maximum expiration date:

```
   2003-05-14   adjusted maximum expiration date
 - 2000-07-05   declared delinquent by Parole
      02-10-09  delinquent time owed to maximum term
 -    00-01-23  53 days of parole jail time
      02-08-16  net delinquent time owed to maximum term
 + 2000-09-27   date returned to DOCS as a conditional release violator
   2003-06-13   adjusted maximum expiration date
```

Dkt. # 57, ¶ 7 and Exhibit F thereto; Dkt. #58, ¶ 11. Thereafter, DOCS updated the calculation of plaintiff's maximum expiration date to reflect that Parole had adjusted his delinquency date from July 5, 2000 to July 11, 2000. Dkt. # 57, ¶ 8 and Exhibit G thereto; Dkt. #58, ¶ 12. Below is the updated calculation:

```
      2003-05-14    adjusted maximum expiration date
   -  2000-07-11    declared delinquent by Parole (adjusted)
         02-10-03   delinquent time owed to maximum term
       - 00-01-23   53 days of parole jail time
         02-08-10   net delinquent time owed to maximum term
   +  2000-09-27    date returned to DOCS as a conditional release violator
      2003-06-07    adjusted maximum expiration date
```

*Id*. Because plaintiff's maximum expiration date of June 7, 2003 was a Saturday, plaintiff was released and discharged from DOCS on Friday, June 6, 2003. Dkt. # 57, ¶ 9; Dkt. #58, ¶ 13.

As set forth above, plaintiff alleges that he was unconstitutionally detained beyond his "court assigned maximum release date of May 14, 2003." Dkt. #1, ¶ 9. To the extent plaintiff is alleging that his maximum release date should have remained May 14, 2003, defendants argue that he fails to take into account the mandatory provisions of N.Y. Penal Law § 70.40(3) as they apply to the revocation of his release and his return to DOCS as a conditional release violator. Dkt. #57, ¶ 10; Dkt. #58, ¶ 14. In further support of their motion for summary judgment, defendants argue that none of the named defendants were responsible for inmate sentence computations. Rather, according to defendants, inmate sentence computations and related determinations are made by the Inmate Records Coordinator and/or the Facility Parole Officer.

In addition to the foregoing, defendants argue that DOCS Commissioner Goord had no personal involvement in the calculation of any DOCS' inmate's release dates, including those of plaintiff. Dkt. #58, ¶ 15. Defendants further assert that defendant Goord does not have "any technical understanding of the numerous calculation statutes that are applied in the determination of inmates' release dates." *Id*. At all times relevant to the allegations in the complaint, defendant James T. Conway was the Deputy Superintendent at Attica and Acting Superintendent at Attica. *Id*. at ¶ 16. Defendant Conway did not make any determination about plaintiff's maximum expiration date nor did he perform any calculations concerning the length of plaintiff's sentence. *Id*. at ¶¶ 20-21. Defendant Conway did, however, respond to a piece of correspondence from plaintiff on or about February 13, 2003. Dkt. #55, ¶ 9. In his Memorandum to plaintiff, defendant Conway advised plaintiff that the Attica Inmate Records Coordinator Office "has been doing time computations for many years, very successfully." *Id*. at ¶ 10 and Exhibit A thereto. Defendant Conway further advised plaintiff that, "Mrs. Priestley has advised you in writing of your time computation. Your recourse is 'Sentencing Review' or court." *Id*. Thereafter, by memo dated February 20, 2003, Mrs. Priestley stated to plaintiff,

> Penal Law 70.40, Note 8 and 9, Article 70 reflects how a time computation is completed for a parole violator. As Acting Superintendent Conway, stated to you in his memo, your recourses [sic] are to contact the Office of Sentencing Review, State Office Building #2, 1220 Washington Ave., Albany, NY 12226, or bring an Article 78 in local court.

Dkt. #55, ¶¶ 11-12 and Exhibit B thereto. With the exception of his February 13, 2003 memo to plaintiff, defendant Conway states that he had no involvement with this matter. Dkt. #55, ¶ 13.

Finally, defendants argue that at all times relevant to the allegations in plaintiff's complaint, defendant Richard A. Savage was the Deputy Superintendent of Programs at Attica. Dkt. #58, ¶ 27. Defendant Savage was not responsible for inmate sentence computations; as described above, those determinations were made by the Inmate Records Coordinator and/or the Facility Parole Officer. *Id*. at ¶ 29. Moreover, defendant Savage did not receive any correspondence from plaintiff with respect to plaintiff's claim that his maximum expiration date was improperly calculated. *Id*. at ¶ 30. Defendant Savage further asserts that he has no personal knowledge of plaintiff's claims alleged in the complaint. *Id*. at ¶ 31.

## DISCUSSION AND ANALYSIS

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and

must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment,

> must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Official Capacity Claims**

Plaintiff commenced the instant action against James Conway, T.G. Eagen, Richard A. Savage, Glenn S. Goord, and K. Bellamy. Dkt. #1. Plaintiff's complaint does not, however, specify whether the defendants have been named in the action in their personal and/or official capacities.[2] Dkt. #1. As noted above, defendants T.G. Eagen and K. Bellamy have previously been terminated as parties in this action. Dkt. #14. In addition, plaintiff's First through Fifth claims were also dismissed. *Id*. Plaintiff's claims against the above-named, remaining defendants are asserted pursuant to 42 U.S.C. § 1983. In order to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York*, 985 F.2d 94,98 (2d Cir. 1993).

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89,90-100 (1984). It is well-settled that states are not "persons" under § 1983, and thus, Eleventh Amendment immunity is not

---

[2] Plaintiff's opposition to defendants' motion for summary judgment seems to concede that his claims against defendant Conway are not in his official capacity. Dkt. #68, ¶ 7. Moreover, plaintiff further states, "[t]he Defendants' individual capacity did permit them to respond to your Plaintiffs [sic] plight." *Id*. at ¶ 8. Thus, it appears as though plaintiff does not dispute that his claims against defendants Conway, Savage and Goord are all in their individual capacities.

abrogated by that statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bar extends to agencies and officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Accordingly, to the extent that plaintiff's claims against the remaining defendants are brought in their official capacities, such claims are barred by the Eleventh Amendment and those claims are dismissed. Based on the foregoing, the balance of this Court's Decision and Order will address plaintiff's claims against the remaining defendants based on this Court's conclusion that such claims are against the defendants in their individual capacities.

**Plaintiff's Maximum Expiration Date Was Properly Calculated**

There is no dispute, a prisoner has a liberty interest in being released upon the expiration of his maximum term of imprisonment. *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993); *McCants v. Jones*, 98-CV-6337, 1999 WL 804009 (W.D.N.Y. Sept. 30, 1999). In order to succeed on a section 1983 claim alleging imprisonment beyond the expiration of the prisoner's sentence, plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and of the risk that unwarranted punishment was being or would be inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Third, plaintiff must demonstrate a causal connection between the official's response to the problem

and the infliction of the unjustified detention. *McCants v. Jones*, 98-CV-6337, 1999 WL 804009, at *2 (W.D.N.Y. Sept. 30, 1999).

As a threshold matter, defendants maintain that the calculation of plaintiff's maximum expiration date was proper and therefore, plaintiff was not unconstitutionally detained beyond his maximum expiration date. Specifically, defendants argue that plaintiff was properly released from DOCS' custody on June 6, 2003. In sharp contrast, plaintiff alleges that his maximum expiration date should have remained May 14, 2003, notwithstanding the fact that Parole declared plaintiff delinquent and he was returned to DOCS defendants as a conditional release violator. As will be discussed below, plaintiff's argument must fail because he neglects to take into account the mandatory provisions of N.Y. Penal Law § 70.40(3) as they apply to the revocation of his release and his return to DOCS as a conditional release violator.

On November 7, 1985, plaintiff was sentenced by the Oneida County Court to a term of six (6) years to eighteen (18) years for Sodomy 1st and two terms of two (2) years to six (6) years for Sexual Abuse 1st. Dkt. #58, ¶ 6. The three terms were ordered to run concurrent. *Id*. The 1985 sentences commenced when plaintiff was transferred to DOCS on December 24, 1985 pursuant to N.Y. Penal Law § 70.30(1). *Id*. at ¶ 7. At that time, pursuant to N.Y. Correction Law § 600-a and N.Y. Penal Law § 70.30(3), the eighteen (18) year maximum term was credited with 218 days of jail time "certified to the 1985 sentences by the Oneida County Sheriff's Department." *Id*.

The maximum expiration date of the 1985 sentences was initially calculated as follows (years-months-days):

```
   18-00-00    controlling maximum term of concurrent 1985 sentences
 - 00-07-08    credit of 218 days of jail time
   17-04-22    time to serve on maximum term
 + 1985-12-24  date 1985 sentences commenced upon transfer to DOCS
   2003-05-15  initial maximum expiration date
```

Dkt. #57, ¶ 4 and Exhibit B thereto; Dkt. #58, ¶ 8. Thereafter, on September 27, 1996, the maximum expiration date of the 1985 sentences was recalculated to reflect an increase of plaintiff's jail time credit from 218 days to 219 days as follows:

```
   18-00-00    controlling maximum time of concurrent 1985 sentences
 - 00-07-09    credit of 219 days of jail time
   17-04-21    time to serve on maximum term
 + 1985-12-24  date 1985 sentences commenced upon transfer to DOCS
   2003-05-14  adjusted maximum expiration date
```

Dkt. #57, ¶ 5 and Exhibits C & D thereto; Dkt. #58, ¶ 9.

On May 17, 1999, plaintiff was conditionally released to supervision by Parole. Thereafter, Parole declared plaintiff delinquent as of July 5, 2000. Dkt. #57, ¶ 6; Dkt. #58, ¶ 10. Accordingly, the 1985 sentences were interrupted during the period between the July 5, 2000 delinquency date and the September 27, 2000 date on which plaintiff was returned to DOCS as a conditional release violator. Dkt. #57, ¶ 6 and Exhibits A & E thereto; Dkt. #58, ¶ 10; *see also* N.Y. Penal Law § 70.40(3)(b). Upon

plaintiff's return to DOCS as a conditional release violator on September 27, 2000, the 1985 sentences were thereafter credited with fifty-three (53) days of parole jail time for the period between August 5, 2000 and September 26, 2000. Dkt. #57, ¶ 7; Dkt. #58, ¶ 11. Accordingly, on October 2, 2000, the July 5, 2000 delinquency date and the 53 days parole jail time credit resulted in the following re-calculation of the plaintiff's maximum expiration date:

```
  2003-05-14   adjusted maximum expiration date
- 2000-07-05   declared delinquent by Parole
  02-10-09     delinquent time owed to maximum term
- 00-01-23     53 days of parole jail time
  02-08-16     net delinquent time owed to maximum term
+ 2000-09-27   date returned to DOCS as a conditional release violator
  2003-06-13   adjusted maximum expiration date
```

Dkt. # 57, ¶ 7 and Exhibit F thereto; Dkt. #58, ¶ 11. Thereafter, DOCS updated the calculation of plaintiff's maximum expiration date to reflect that parole had adjusted his delinquency date from July 5, 2000 to July 11, 2000. Dkt. # 57, ¶ 8 and Exhibit G thereto; Dkt. #58, ¶ 12.

```
  2003-05-14   adjusted maximum expiration date
- 2000-07-11   declared delinquent by Parole (adjusted)
  02-10-03     delinquent time owed to maximum term
- 00-01-23     53 days of parole jail time
  02-08-10     net delinquent time owed to maximum term
+ 2000-09-27   date returned to DOCS as a conditional release violator
  2003-06-07   adjusted maximum expiration date
```

*Id*. Because plaintiff's maximum expiration date of June 7, 2003 was a Saturday, plaintiff was released and discharged from DOCS on Friday, June 6, 2003. Dkt. # 57, ¶ 9; Dkt. #58, ¶ 13.

As noted above, plaintiff's allegations fail to take into account the mandatory provisions of N.Y. Penal Law § 70.40(3) which provides in its entirety,

> 3. Delinquency.
>
> (a) When a person is alleged to have violated the terms of presumptive release or parole and the state board of parole has declared such person to be delinquent, the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of correctional services.
>
> (b) When a person is alleged to have violated the terms of his conditional release or post-release supervision and has been declared delinquent by the parole board or the local conditional release commission having supervision over such person, the declaration of delinquency shall interrupt the period of supervision or post-release supervision as of the date of the delinquency. For a conditional release, such interruption shall continue until the return of the person to the institution from which he was released or, if he was released from an institution under the jurisdiction of the state department of correctional services, to an institution under the jurisdiction of that department. Upon such return, the person shall resume service of his sentence. For a person released to post-release supervision, the provisions of section 70.45 shall apply.
>
> (c) Any time spent by a person in custody from the time of delinquency to the time service of the sentence resumes shall be credited against the term or maximum term of the interrupted sentence, provided:
>
>> (I) that such custody was due to an arrest or surrender based upon the delinquency; or

> (ii) that such custody arose from an arrest on another charge which culminated in a dismissal or an acquittal; or
>
> (iii) that such custody arose from an arrest on another charge which culminated in a conviction, but in such case, if a sentence of imprisonment was imposed, the credit allowed shall be limited to the portion of the time spent in custody that exceeds the period, term or maximum term of imprisonment imposed for such conviction.

N.Y. Penal Law § 70.40(3) (McKinney 2009). Accordingly, by operation of New York law, Parole's declaration of plaintiff's delinquency interrupted plaintiff's sentence beginning with July 5, 2000 (later modified to July 11, 2000) and continuing until the date he was returned to DOCS (September 27, 2000). Thus, because plaintiff ignores the application of N.Y. Penal Law § 70.40(3), the allegation that plaintiff's maximum expiration date should have remained May 14, 2003 must fail as a matter of law. *See Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647 (2d Cir. 1993).

**Personal Involvement**

It is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)*; Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir. 1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) was informed of the violation and failed to remedy the wrong; (3) created or permitted the continuation of a

policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873, *citing Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In further support of their motion for summary judgment, defendants submit the alternative argument that none of the remaining named defendants, James Conway, Richard Savage or Glenn Goord, were personally involved in the alleged constitutional violation. In opposition, plaintiff states "[d]efendants did have involvement with Plaintiff's herein stated plight beyond their stated allegations within their individual declaration's [sic]." Dkt. #68, ¶ 9. Without more, plaintiff's wholly conclusory statement that defendants were personally involved in the alleged constitutional violations is insufficient to defeat defendants' motion for summary judgment. Thus, absent any evidence in admissible form to support the allegations that defendants were personally involved in the alleged constitutional violations, plaintiff's complaint must fail for lack of personal involvement. Lastly, defendants argue that they are entitled to qualified immunity. Because this Court finds that plaintiff's claim fails because the maximum expiration date was properly calculated and for lack of personal involvement, the Court need not address defendants' qualified immunity argument.

## **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #49) is **GRANTED**.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

DATED: Buffalo, New York
July 1, 2009

s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**